Judge Buckner,
delivered the opinion of the court.
On the 3rd of March, 1819, Robert Mc-Keoun executed bis obligation to the plaintiffs in error, binding himself, heirs, esc. to convey to them, a tract of land, in the count}" of Jefferson, supposed to contain one hundred and forty one acres, on or before the 4th of March, 1 b‘20, by deed with general warranty, clear from allimcumbrances; audio deliver possession thereof, by the 20th of that month.
It, McKeoun having failed to Convey in pursuance of the contract, died; and Samuel Frederick administered on his estate. For this failure, said P. J. Funk, instituted -an action of covenant on the bond against the administrator, and recovered judgment for $2565, and costs.
In March, 1825, Polly McKeoun, widow of said Robert, filed her hill in chancery, making the plaintiffs in error, Frederick the administrator, George Wolf, Geo. *163 Oldham, and Eliza II. McKeoun, infant daughter and only child of her deceased husband, defendants; the object of which was to enjoin said judgment, and com: pel the Funks to accept a conveyance of twenty seven acres of land, in discharge of it. The bill was evidently filed under an erroneous impression, with respect to the terms of the writing, for the violation of which, the judgment had been recovered.
The following arc, in substance,its statements. Wolf sold twenty seven acres of land,.part of a tract of 500 acres, patented to Peter Whepherd, to Morgan McKeoun and Oldham. The latter sold his interest therein, to said Morgan, who, as she had been informed, sold the whole-of said 27 acres to Robert McKeoun, who had sold it to the plaintiffs in error; for a failure to convey which, the judgment against his administrator had been recovered..
At time of said last sale, Robert McKeoun holding Wolf’s bond for a conveyance of the land, assigned it to the plaintiffs in error; and executed to them his obligation for a conveyance thereof, to he made on or before the 4th of March, 1820. At the date of the contract, they took possession of the land, and have ever since enjoycd'its undisturbed possession..
She also alleges, that if sale, from Morgan McKeoun to her deceased husband, was not made, as stated, she was entitled to the land, under the will of said Morgan, who had thereby, devised the whole of his estate, real' and personal, to her, which, after his death, had been duly proved and admitted to record, a copy of which is made an exhibit.
She prays that Wolf may he compelled to convey said twenty seven acre'!, to the plaintiffs in error; orto herself, in which case, she was willing to make-a conveyance thereof to them, in discharge of their judgment. If the court should deem it improper,, to thus decree a specific execution of the contract, she prays that the Funks may be ordered to relinquish their right to the land aforesaid to, and account with her, for the rents and profits.
Frederick was appointed guardian ad litem, for Eliza H. McKeoun, and filed, her answer, stating her ignorance of the matters set forth in the bill, and requiring proof.
*164 For himself as administrator, he answered, acknowledging the correctness of the statements, contained in the-bill, and adopting it, as a part of liis answer; which he filed as a cross bill against the plaintiffs in error, and also, prays that they may be compelled to accept a, deed for said land, in discharge of llieir judgment; and for such other relief as might be deemed equitable.
The plaintiffs in error, filed their answer, making it a crossbill against the complainant, Polly, the administrator, and Eliza, tbe infant.
They say, that when the obligation was executed on which they had recovered the judgmentmentioned, Robert, the obligor,informed them, that Morgan McKeoun and Oldham,had purchased of Wolf some land, which they supposed, was the tract of twenty- seven acres, described in the bill, and that Oldham had sold his Interest in it, to said Morgan, who had sold it to him, Robert.
As to. tbe judgment, they say it was not for a failm’e to convey 27acres; but L4Í acres as would appear by the bond, on which they had sued, a copy of which they exhibit. The 27 acre tract was embraced within the 141 acres.
With respect to R. McKeoun’s title to said tract, except the twenty seven acres, they make the following; statement.
Robert McKeoun, father of the obligor, died intestate, leaving John, Robert and Morgan McKeoun, his children and heirs at law, to whom, descended from their father, as they had been informed, a tract of land, of which, this constituted a part. John died also, intestate, leaving a widow and four infant children, who were still minors, His widow had intermarried with a man, named Bishop, and claimed her right of dower, in that partof the land, to which her lale husband was entitled. His children, also, claimed their fathers interest therein, being one third part.
They admit, that they took possession of said 141 acres, shortly after their purchase, which they still retained;. but insist, that they had enhanced its value, by an amelioration of the soil, and by other improvements, which they had put on it.
*165 They allege that an execution issued upon their judgment, against Frederick, had been placed in the bunds of the sheriff of Jefferson county, where the administrator resided, and had been returned by him, “no property, &c.” and pray that the laud, for the failure to convey which, they had recovered said judgment, might he sold by a decree of the court, in satisfaction of their demand.
Oldliam disclaimed all interest in the land, and Wolf answered expressing a willingness to convey, to whomever the court might direct.
Polly McKeoun in her answer’, admits that John Mc-Keoun, brother of her deceased husband, did die without will, leaving the children, named in the cross bill of the plaintiffs in error, his heirs at law; but alleges, that they (the plaintiffs) were in possession of the land, previous to the death of said John, who liad by a bond, which she tiled, as a part of her answer, sold his part of it to said Robert. She denies that his widow sat up any claim to dower in it. She also, states, that Morgan McKeoun had sold the part of said 141 acres, to which he was entitled, to his brother Robert, and executed a bond therefor, which she files as an exhibit.
Frederick adopted this answer as bis own, making it a cross bill against the children of said John McKeoun, whom he represents as minors. As guardian for Eliza II. McKeoun, be filed her answer, insisting upon the truth of the statements contained, in her mother’s answer.
The infant children of John McKeoun, ansrvered by a guardian ad litem, calling for proof of the allegations, made in the cross bill of Frederick.
During the same term, at which this answer was filed, the circuit court entered a decree perpetually injoining the judgment at law, and ordering that conveyances of the 141 acres, by metes and bounds, as described in tbe bond from Robert McKeoun, to the plaintiffs in error, should be made to them, by the infant children of John McKeoun, through tbe agency of a commissioner; and by Wolf and Polly McKeoun, by deeds relinquishing their titles to said tract; and by Frederick the administrator, and Eliza H. McKeoun, “by deed with general warranty, binding them to the extent of the assets, real *166 and'persona], to them descended or derived from said Robert,” and expressing, as the consideration, the sum of $2009, that being the amount of the purchase mo-neyi
There was one deposition only, taken in the cause, and that proves nothing, except the execution of the bond from John McKeoun, to Robert, as alleged by Polly McKeoun, in her answer to the cross bill of the plaintiffs in error.
The parties were allowed by the court, to prove on the trial, the execution of any exhibit in the cause, and in that way, we suppose the bond from Morgan to Rob* ert McKeoun for his interest in the land, derived by descent from their father, was proved.
Subsequent to this interlocutory decree, Frederick the administrator, moved the court to suspend its execution and permit him to file an amended bill, in the cause, against the plaintiffs in error, which, upon leave given, he did; and thereby states, that since the decree was rendered, he had discovered, the plaintiffs in error, without his knowledge or consent, had procured an order of court, at the June term, 182(5, directing so much of the judgment, which they had recovered against him, as might be necessary for that purpose, to stand as a set off, against three judgments, which he had previously recovered against them, as administrator of R. McKeoun, for a part of the purchase money, due for the hmd sold to them by his testator. He prays that the decree may he so amended, as to set aside the order directing said set off; and that he be allowed to have the benefit of his said judgments, &c.; or that they be decreed to. pay to him the amount thereof.
This bill remaining unanswered, was taken as confess' ed, and thereupon, the court further decreed, that said Funks should pay to Frederick, as administrator of R. McKeoun, several sums of money specified in the decree; and that Frederick have executions therefor, against them.
To reverse this original and amended decree, the plaintiffs in error prosecute this writ of error, questioning its correctness on various grounds.
The whole proceeding is replete with errors, some of which we shall notice.
lt obligor, in bond for conveyance of land, negligently or wil-fully violate liis contract, and a judgment is .fairly obtained against him, the chancellor will not compel vendee tci complete the contract.
For a failure on the part of R. McKeoun, to comply with his con!¡act, within the lime agreed upon, the plaintiffs in error had an undeniable right, to demand a compensation in damages. There was not only an absence of proof, to show that they had been guilty of unfair conduct, in olfiainmg their judgment; but they are not even charged with it. Although a copy of the record in the common law suit, of P. & J. Funk, against Frederick, is referred to, in the bills, and some of the answers, it has not been forwarded with this record. When, that suit was commenced, is not slat ed; but from the date of the judgment, which is shown, it is probable, several years had elapsed, from the time, the deed for the land sold to the Funks, should, according to contract, have been made, and its institution.
That, Robert McKeoun was not vested with the legal title to the land, which he had hound himself to convey is clear; and that, when the hill was filed, and the decree pronounced, his heiress was unable to convey a valid title to it, is equally clear. Had they, however, been able to convey an indisputable title, the facts, as stated in the ¡filis of Polly McKeoun and Frederick, would not, if true, have authorized the decree pronounced. The repeated decisions of this court, have shown the error of an opinion, which is too prevalent, that an obligor, who is bound to make a conveyance of properly, may negligently or w ilfuiiy violate liis contract; and after a judgment, fairly obtained, has been rendered against him, successfully apply to the chancellor, who had not before had possession of the case for a specific execution of it.
But there was an obvious deficiency of proof as to the title. Upon what ground, the circuit court concluded, that the persons, who, by the decree, were directed to convey, were vested w ith the legal title, it is difficult to conjecture. Jiow did. Wolf derive title, to the twenty seven acres, from ¡shepherd, to whom it was patented ? Yv hat is the nature of the claim, which is alleged, to have descended, 10 John, Robert, and Morgan Mc-Keoun, from their father? To whom was it patented? It has been insisted, that the plaintiffs in error, did not call for an exhibition of tille; and that the only defect suggested by them, related to the claim of the children and widow of John filc.Leoun. The obvious and sa *168 tisfactory answer, is, they were not complainants seeking, but deiendants, resisting a specific execution.
Improper to render decree against minors, without giving them time after full 'age to show “cause against 'it.
It was not their duty, to point out defects, but of the complainants, to exhibit the testimonies of a title, clear and indisputable. Where, in a contest like this, a plaintiff, at law, can be compelled to yield the advantage of his judgment at law, the tille tendered, must be such, as will secure to him, the enjoyment of the property.
The allegations in the bill of P. McKeoun, and cross-bill of Frederick, that the judgment was recovered for a failure to com ey twentys-even acres, has been shown, to he erroneous. It was probably a mistake of the lawyer, who drew those bills. It has made, however* no important difference in the aspect of the case.-
In the writing filed as the evidence of the sale, from Morgan to Robert McKeoun, of his part of the land, alleged to have descended from their father, an exception is made of a part, described therein, as Léah Mc-Keoun’s.
Whether the part, thus excepted, was included in the 141 acres, sold to the Funks, we are left to conjecture; but, as there is no proof of a valid title to any part of it, we deem it unnecessary, further, to notice this, or otlicr considerations, which might be mentioned, showing the cloud of doubt, and uncertainty, which envelopes the title decreed to the plaintiffs in error.
Having taken this view of the care, it. is unnecessary to make any remarks, as to the utility of that part of the decree, wiiich directs, that Wolf, and Polly McKeoun should convey the whole tract of 141 acres, although neither of them ever pretended to set up claim to any, except a small part of it; or, as to the impropriety of rendering a decree against deiendants, who were minors, without giving time, until after their arrival at full age, to show cause against it; and that moreover, rendered during the same term, at which their answers were filed.
Whether the cross bill of the plaintiffs in error, praying that the land, so sold to them, may he subjected by decree to the payment of their judgment, ought to he sustained, is a matter, about which, we might have felt some doubt, considering the aspect, under which their *169 V?Uim is exhibited, oí- had there been no precedent in point. That a purchaser who pays his money for property, upon a contract, which is rescinded by a court of equity, upon the ground of fraud, in the vendor, ás a general rule, holds a lien upon it, for the re-payment of the money advanced, is veil settled; see the case of Scott vs. Clarkson's executor, I Bibb, 280, and that of Bibb vs. Prather, &c. and Morehead vs. Prather, &c. Ibid, 316. The same doctrinéis applicable to cases, where no fraud has been practiced; butwliere it appears, that the vendee, although, willing to accept a ti-tie, seeks a rescisión of the contract, on account of the inability of the vendor to convey. Such was the case of Griffith vs. Depew and others, III Mon, 177.
If rescisión of °°a1tjac0t/°¿r inabijityin0 vendor to “¿te title; Hen on the a property sold, for his ad vanc0‘
Vendee, who, has recovered at^Jalvfora violation of á 00yerianl to ■ convey land-, has a lion on 'the land for the purchase money.
*169 But whether such lien attaches, and a court of chan'cery should afford its aid in enforcing it, where the ven-dee having enjoyed the undisturbed possession of the property sold, takes advantage of the mission of the vendor, strictly to comply with Ms contract, sues at law, and recovering judgment, refuses to yield it, although a valid title be tendered, would demand a thorough investigation, were the point now, for the hrst time, presented. For although, in this case, there is no proof, that the title decreed to he conveyed is valid; yet its invalidity has not been shown; nor have the plaintiffs in error pointed out any defect in it, winch was not obviated by the proof in the cause, except the alleged claim, for dower by tlie widow of John McKcoun, which was denied to exist; and was unsupported by any evidence. They haré displayed no anxiety, nór even willingness to accept a title, however well satisfied they might be-, of its goodness¿
We have already said, that in resisting the specific ex, ecution, it was not their duty to demand an exhibition of title. Had they done so, it is not improbable, that all difficulty on that subject might have been removed; But the doctrine, on this point, has been settled,by this court, in former cases.
See Oldham vs. Woods, III Mon. 47. In that case, it was decided, that a vendee, who recovered a judgment at law, for a -violation of a covenant to convey land; and who was unwilling to accept a title, Was Entitled to a lien upon the land for the purchase money *170 advanced; and could not be compelled-, to part with his íien, till the money was repaid.
Vendee of land in possession, under a title bond, obtaining judgment on the bond against vendor for failure to convey, is liable for rents and profits, and is entitled to receive pay forlasting and. valuable improvements.
■Crittenden, for plaintiff; Denny, for defendant'.
That the land, in this case, has descended to the heiress, cannot change the principal.
The amendment made to the decree, as it was at first rendered, was predicated, on the specific execution of the contract, which had been ordered. But as the decree, co far as it affects the judgment of the plaintiffs in error, must bo reversed, for the reasons mentioned, there can ho no impropriety, in permitting the order, directing the set off to be reinstated. That, however, is u matter, not now before this court.
The plaintiffs in error have a lien upon the land, which they purchased, for whatsoever may be duelo them, on tbeir judgment. A deduction, however, must be made therefrom, for whatever the rents and profits of the premises, during the time they have had possession of said tract, may exceed the value of the lasting and valuable improvements, which they made upon it, previous to the institution of their suit at law.
The account for rents ought to be continued, as long as they retain the possession, under their lien, if the improvements should exceed the rents, they will not be entitled to any allowance, for such excess, as they have not asked for'it.
A decree must he entered, that, unless the amount, thus ascertained to he due to them, be paid on or before some day pointed out by the court, which should he a day in term-time, a commissioner named shall sell, having first advertised the day and place of such sale, whatever title the said Eliza If. McEeoun may have in said land; or in so much thereof, as may be necessary to satisfy said demand.
The decree of the circuit court must he reversed with costs, 'and the cause remanded with directions to enter one, not inconsistent with this opinion.